UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHON WHITESIDE,<br><br>Plaintiff,<br><br>v.<br><br>SPSG PARTNERS, LLC, et al.,<br><br>Defendants. | No. 2:20-cv-01643-TLN-DMC<br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Stephon Whiteside's ("Plaintiff") Motion to Remand and Request for Attorney's Fees and Costs.  (ECF No. 5.)  Defendants SPSG Partners, LLC ("SPSG"), Sukut Construction, Inc., Sukut Construction, LLC, Goodfellow Bros. California, LLC, and Pacific States Environmental Contractors, Inc. (collectively, "Defendants") filed an opposition.  (ECF No. 9.)  Plaintiff filed a reply.  (ECF No. 10.)  For the reasons set forth below, Plaintiff's motion is GRANTED.

///

///

///

///

///

///

1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2    This action arises out of Defendants' alleged wage and hour violations.  (*See* ECF No. 1-1

3  at 367–75.)  From April 2019 to July 2019, Plaintiff worked as a laborer for Defendants, who

4  performed clean-up work in and around the town of Paradise, California, stemming from the

5  Camp Fire in 2018.  (*Id.* at 371–72.)  Plaintiff alleges he typically worked more than 8 hours per

6  day and 40 hours per week.  (*Id.* at 372.)  Plaintiff further alleges: (1) Defendants failed to pay

7  Plaintiff and other Aggrieved Employees for all hours worked (e.g., Plaintiff was not paid for two

8  days of mandatory orientation and Defendants had no policy, devices, or locks for accurately

9  recording hours); (2) Defendants instituted a policy that paid per shift rather than per hour (and

10  Defendants rounded any work time to the nearest half an hour, which negatively impacted

11  Plaintiff and other Aggrieved Employees); (3) Plaintiff was required to work through meal

12  breaks; (4) Defendants failed to provide rest breaks of at least ten minutes; (5) Defendants did not

13  have a policy to reimburse Plaintiff and other Aggrieved Employees for using their personal

14  phones for work purposes; (6) Defendants failed to provide all final wages owed to Plaintiff and

15  other Aggrieved Employees within 24 hours of their termination or 72 hours of their resignation;

16  and (7) Defendants failed to provide Plaintiff and other Aggrieved Employees with accurate wage

17  statements.  (*Id.* at 372–73.)

18    Plaintiff filed suit against Defendants in Butte County Superior Court on January 13, 2020

19  (*id.* at 4–25), and filed the operative First Amended Complaint ("FAC") on July 29, 2020 (*id.* at

20  367–75).  The FAC asserts one claim for a violation of the Private Attorneys General Act

21  ("PAGA"), which alleges that Defendants have violated numerous provisions of the California

22  Labor Code and Industrial Welfare Commission ("IWC") Wage Orders and seeks civil penalties

23  from Defendants pursuant to Labor Code §§ 2699(a) and 2699.3.  (*Id.* at 373–74.)  Defendants

24  filed a Notice of Removal on August 14, 2020, removing the action to this Court based on federal

25  question jurisdiction — specifically, preemption under § 301 of the Labor Management Relations

26  Act ("§ 301" or "LMRA").  (*See* ECF No. 1.)  Plaintiff filed the instant motion to remand on

27  September 11, 2020.  (ECF No. 5.)

28  ///

1    **II.    STANDARD OF LAW**

2        28 U.S.C. § 1441 permits the removal to federal court of any civil action over which "the

3    district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Removal is

4    proper only if the court could have exercised jurisdiction over the action had it originally been

5    filed in federal court."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

6        Courts "strictly construe the removal statute against removal jurisdiction," and "the

7    defendant always has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980

8    F.2d 564, 566 (9th Cir. 1992) (per curiam).  Furthermore, "[i]f the district court at any time

9    determines that it lacks subject matter jurisdiction over the removed action, it must remedy the

10   improvident grant of removal by remanding the action to state court."  *California ex rel. Lockyer

11   v. Dynegy, Inc.*, 375 F.3d 831, 838, *as amended*, 387 F.3d 966 (9th Cir. 2004), *cert. denied*, 544

12   U.S. 974 (2005).

13       The "presence or absence of federal question jurisdiction is governed by the 'well-pleaded

14   complaint rule,' which provides that federal jurisdiction exists only when a federal question is

15   presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc.*, 482 U.S. at

16   386.  Removal cannot be based on a defense, counterclaim, cross-claim, or third party claim

17   raising a federal question, whether filed in state court or federal court.  *See Vaden v. Discover

18   Bank*, 556 U.S. 49 (2009); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042–43 (9th Cir. 2009).

19       A corollary to the "well-pleaded complaint rule" is the "complete preemption" doctrine.

20   *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).  Under this doctrine, the

21   preemptive force of a federal statute may be strong enough to convert state law claims into

22   federal claims.  *Id.*  Complete preemption recognizes the importance of creating a single body of

23   federal law for areas that would likely "be affected by separate systems of substantive law."  *See

24   Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962).

25       The Supreme Court has held that the complete preemption doctrine applies to § 301 of the

26   LMRA.  *Id.*  If a claim derived from a collective bargaining agreement ("CBA") is preempted, it

27   is said to be one arising under "the laws of the United States" within the meaning of the removal

28   statute and within the "original jurisdiction" of the district courts.  *Avco Corp. v. Aero Lodge No.*

3

1      *735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968).  State law

2      does not provide for an independent source of private rights to enforce CBAs.  *Id.* at 560–561.

3          The Supreme Court has insisted that § 301 does not preempt "every dispute concerning

4      employment, or tangentially involving a provision of a [CBA]."  *Allis-Chalmers Corp. v. Lueck*,

5      471 U.S. 202, 211 (1985).  The Ninth Circuit has provided that a state law claim is not preempted

6      "unless it necessarily requires the court to *interpret* an existing provision of a CBA."  *Cramer v.*

7      *Consol Freightways*, 225 F.3d 683, 691 (9th Cir. 2001) (en banc) (as amended) (emphasis added).

8      Merely "[looking] to" the CBA does not mean that a state law claim will be defeated by § 301.

9      *Livadas v. Bradshaw*, 512 U.S. 107, 124–125 (1994).  The Ninth Circuit has also stated that

10      "interpret" is defined narrowly, and "means something more than 'consider,' 'refer to,' or

11      'apply.'"  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

12          Federal law preempts state law claims based directly on rights created by CBAs and

13      claims that are substantially dependent on analysis of the agreement.  *Lingle v. Norge Div. of*

14      *Magic Chef, Inc.*, 486 U.S. 399, 405–406 (1988).  To determine whether a claim meets the

15      "substantially dependent" standard, courts will look at whether evaluation of the claim is

16      "inextricably intertwined" with consideration of labor contract terms.  *See Allis-Chalmers Corp.*,

17      471 U.S. at 213.  Courts will also look at whether the state law claim derives or is implied from

18      the contract rights established under the CBA.  *Id.* at 220.

19      **III.**    **ANALYSIS**

20          Plaintiff moves to remand, arguing that Defendants' Notice of Removal is (1) untimely

21      under 28 U.S.C. §§ 1446(b)(1) and (b)(3); and (2) fails to meet its burden to establish the PAGA

22      action is preempted under § 301 of the LRMA.  (*See* ECF No. 5-1.)  Because the Court finds that

23      the PAGA action is not preempted and removal was improper, it declines to address whether

24      removal was timely.  The Court will first address the preemption argument and then address

25      Plaintiff's request for attorney's fees and costs.

26          A.    Whether Plaintiff's PAGA Claim is Preempted by the LMRA

27          Plaintiff argues his PAGA claim is not subject to the CBA nor has he conceded his PAGA

28      claim is subject to the CBA and/or any grievance and arbitration provision contained therein, so

as to implicate preemption issues under the LMRA.  (ECF No. 5-1 at 17–18.)  Plaintiff cites to *Ross v. Stater Bros. Markets* and states that it "followed the *Caterpillar* holding with respect to a state overtime claim under Labor Code [§] 510" and held that "it is 'irrelevant' whether the CBA, pursuant to the [§] 510 exemption, would extinguish and supersede the [§] 510 overtime requirements."  (*Id.* at 18 (citing *Ross v. Stater Bros. Markets*, No. 5:19-CV-00755-SJO (KKx), 2019 WL 6332241, at *2–4 (C.D. Cal. Aug. 8, 2019); *Caterpillar Inc.*, 482 U.S. at 390–91 n.12).)  Plaintiff further argues his PAGA claim is not preempted by § 301 because no interpretation of the CBA is required to resolve the claim, as his claim is "based upon independent state law requiring employees to be paid for all hours worked, to be provided meal and rest breaks, to be issued proper reimbursement, to be issued accurate wage statements, and to be paid all wages upon termination."  (*Id.* at 19–20.)  Plaintiff specifically notes the following: (1) the failure to pay minimum wages and derivative claims is based on a bare minimum labor standard under California law that cannot be abridged or waived in any way, including through a CBA, and any look to the CBA for applicable pay rates in computing penalties is insufficient to warrant preemption; (2) the CBA does not independently provide for meal and rest periods, unlike Labor Code § 512 and IWC Wage Order 16; and (3) the CBA is silent on failure to pay reimbursements and failure to pay wages earned and unpaid at time of discharge.  (*Id.* at 22–24.)

In opposition,[1] Defendants maintain the FAC omits that Plaintiff was a member of the Laborers Union and employed by SPSG through a CBA and that resolution of Plaintiff's claims will require substantial interpretation of various provisions of the CBA.  (ECF No. 9 at 17–18.)  Defendants contend the cases upon which Plaintiff relies are inapposite because they are

---

[1]    Defendants also request the Court take judicial notice of the true and correct copy of the 2018–2023 Master Labor Agreement between United Contractors and the Laborers Union, the relevant CBA at issue.  (*See* ECF No. 9-2.)  Because the CBA is the basis for Defendants' argument that Plaintiff's claims are preempted by the CBA, the Court considers its provisions in deciding in the instant motion.  *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193–94 (C.D. Cal. 2015) (finding judicial notice of a CBA proper in deciding whether certain claims are preempted by the LMRA, as "[the] court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." (citing *Parrino v. FFIP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Down Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006)).  Accordingly, Defendants' request for judicial notice (ECF No. 9-2) is GRANTED.

1  inconsistent with the Ninth Circuit's decision in *Curtis*, which provides that "where there is a

2  valid CBA, 'overtime hours worked' is defined by the relevant CBA, and not as 'overtime'

3  defined by state law."[2]  (*Id.* at 18 (citing *Curtis v. Irwin Industries*, 913 F.3d 1146, 1150 (9th Cir.

4  2019).)

5        Section 301 preempts state law claims where a provision of a CBA needs to be interpreted

6  to resolve the claim.  *Cramer*, 225 F.3d at 691.  Interpretation is required when claims are

7  "inextricably intertwined" with the CBA terms, or derived or implied from rights under the CBA.

8  *Allis-Chalmers Corp.*, 486 U.S. at 213, 220.  The Ninth Circuit has articulated a two-part test to

9  determine whether a state law claim is preempted by § 301:

> [F]irst, an inquiry into whether the asserted cause of action involves
> a right conferred upon by virtue of state law, not by a CBA.  If the
> right exists solely as a result of the CBA, then the claim is preempted,
> and our analysis ends there . . .  If, however, the right exists
> independently of the CBA, we must still consider whether it is
> nevertheless substantially dependent on analysis of a [CBA] . . . If
> such dependence exists, then the claims is preempted by [§] 301; if
> not, then the claim can proceed under state law.

15  *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007) (internal quotation

16  marks and citations omitted).  "[T]o determine whether a state law right is 'substantially

17  dependent' on the terms of a CBA . . . the [Supreme] Court directs us to decide whether the claim

18  can be resolved by 'look[ing] to' versus interpreting the CBA . . . If the latter, the claims is

19  preempted; if the former, it is not."  *Id.* at 1060 (internal citations omitted).  The Ninth Circuit has

20  "stressed that, in the context of § 301 complete preemption, the term 'interpret' is defined

21  narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'"  *Balcorta v.*

22  *Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

23        Here, Plaintiff alleges in his PAGA claim violations of various sections of the Labor Code

24  and IWC Wage Orders.  (*See* ECF No. 1-1 at 373–74.)  The Court finds, therefore, that pursuant

25  to the first step of *Burnside* "the rights are conferred upon by virtue of state law."  491 F.3d at

---

[2]      Defendants also cite to three district court cases applying *Curtis* in remand motions, in which the plaintiffs' claims were either governed by the CBA rather than state law or in which the plaintiffs did not contest the validity of the CBA or that they were covered by them.  (*Id.* at 18–20.)

6

1059–60.  For the second step of *Burnside*, the Court must next determine whether resolution of

the claims is "substantially dependent" on analysis of the CBA.  *Id.*  The Ninth Circuit has found

that a plaintiff's claims "are not substantially dependent on analysis of the CBA" where

resolution of the state law claims did not involve construing the CBA.  *Silva v. Medic Ambulance*

*Service, Inc.*, 846 F. App'x 592, 593 (9th Cir. 2021) (reversing district court's order granting

plaintiff's motion to remand because even though the CBA "may be relevant" to whether the

defendant employer required the plaintiff to remain on call during rest periods, it was primarily a

"purely factual inquiry" that did not depend on interpretation of the CBA).  The Court will

evaluate the claims in turn.

> i.     *Failure to Pay Reimbursements and Failure to Pay All Wages*
>        *Earned and Unpaid at Time of Discharge (Waiting Time Penalties)*
>        *Claims*

The Court finds Plaintiff is correct that the former exists independently of the CBA, the

CBA does not mention this right, and the right is non-waivable, and the latter "is silent as to any

procedures for providing an employee a final paycheck upon termination or separation."  (ECF

No. 5-1 at 22.)  Plaintiff does not dispute the argument with respect to the former claim, but states

that § 10 of the CBA requires interpretation, which states: "[e]ach employee shall be paid wages

in full each week before or at quitting time on the Individual Employer's regular pay day unless

specific arrangements to the contrary are made in writing between the Individual Employer and

appropriate Local Union of the Union."  (ECF No. 9 at 25–26.)  The Court finds the rationale

articulated in *Silva* controls here.  Even though § 10 "may be relevant" to whether Defendants

paid all wages earned and unpaid at the time of discharge, the claim is primarily a "purely factual

inquiry" as to whether or not Defendants complied with Labor Code §§ 201–03, 225.5, and 256,

the code sections Plaintiff alleges have been violated.  *See Silva*, 846 F. App'x at 593.

Accordingly, resolution of these claims are not "substantially dependent" on analysis of the CBA.

*See Burnside*, 491 F.3d at 1059–60.

///

///

1               *ii.       Failure to Pay Minimum Wage and Derivative Claims*

2          Plaintiff cites to a litany of case law to support the proposition that "payment for all hours

3  worked is a bare minimum labor standard under California law that cannot be abridged or waived

4  in any way, including through a CBA" and "[a]ny apparent look to the CBA for applicable pay

5  rates in computing a penalty is not enough to warrant preemption."  (ECF No. 5-1 at 20–21

6  (citing *Burnside*, 491 F.3d at 1060–62; *Gutierrez v. Brand Energy Servs. of Cal., Inc.*, 50 Cal.

7  App. 5th 786 (2020); *Zamora v. Overhill Farms, Inc.*, No. 2:19-cv-03891 VAP (AFMx), 2019

8  WL 3942961, at *4 (C.D. Cal. Aug. 21, 2019); *Castillo v. Long Beach Mem'l Med. Ctr.*, 132 F.

9  Supp. 3d 1194, 1200–01 (C.D. Cal. 2015)).)  In opposition, Defendants cite to various sections of

10  the CBA and argue that these claims require "the Court to analyze and interpret the CBA's

11  overtime provisions," but do not state which specific provisions in particular need ofz

12  interpretation or why.  (ECF No. 9 at 21–23.)  Defendants cite to *Vranish v. Exxon Mobil Corp.*,

13  223 Cal. App. 4th 103, 110 (2014) for the proposition that "the CBA at issue fell squarely within

14  Labor Code [§] 514's terms, and '[n]othing in [§] 514 require[d]' the employer to look to the

15  definition of overtime in [§] 510."  (*Id.* at 21.)  The Court finds that the *Vranish* court came to this

16  conclusion where it was "undisputed that [an] alternative workweek . . . was adopted pursuant to,

17  and was part of, the CBA" and therefore § 510's definition of "overtime" did not apply.  223 Cal.

18  App. 4th at 112–13.

19          Here, the Court finds *Vranish* does not apply because Defendants do not contend that an

20  alternate schedule was adopted pursuant to the CBA such that the provisions of or definitions

21  under state law do not apply.  (*See* ECF No. 9.)  The Court further agrees that the cases to which

22  Plaintiff cites are analogous to the instant matter.  *See Burnside*, 491 F.3d at 1074 (finding the

23  plaintiff's claims not preempted by § 301 because "the right to be compensated for compulsory

24  travel time is a right conferred as a matter of state law that exists independent of the terms of the

25  CBAs, and because the claims to compensation for that time can be resolved without interpreting

26  these agreements"); *Zamora*, 2019 WL 3942961, at *4 (finding § 301 preemption did not apply to

27  the plaintiff's minimum wage claim in spite of the defendants' arguments that the claim required

28  interpretation of the CBA, as the defendants did not offer any authority "to support the contention

1   that an employer's ability to manage its business encompasses the right to pay employees less

2   than the minimum wage"); *Castillo*, 132 F. Supp. 3d at 1200–01 (finding § 301 preemption did

3   not apply to the plaintiffs' overtime claim, as the dispute was "not whether [p]laintiffs' or

4   [d]efendants' preferred method of base pay calculation is proper, but rather whether the overtime

5   rates described in the CBA satisfy state law" and the defendants failed to establish "that the

6   answer to that question would require interpretation, as opposed to application, of the CBA").

7   Similarly here, the rights that have been allegedly violated "exist[] independent of the terms of

8   the CBA[]" and Defendants have not established that resolution of these claims will require

9   "interpretation, as opposed to application, of the CBA."  *See Burnside*, 491 F.3d at 1074; *Castillo*,

10  132 F. Supp. 3d at 1200–01.  Accordingly, resolution of these claims are not "substantially

11  dependent" on analysis of the CBA.  *See Burnside*, 491 F.3d at 1059–60.

12              *iii.*          *Failure to Provide Meal and Rest Period Claims*

13          Plaintiff argues "he was not provided meal and rest breaks in compliance with California

14  law" and he is not "disputing any particular language or term in the CBA requir[es]

15  interpretation."  (ECF No. 5 at 21.)  Plaintiff notes determining whether these provisions were

16  violated "will only require a 'look' to the hypothetical connection between the CBA and the

17  alleged violation," which "is insufficient to invoke federal jurisdiction under [§] 301 of the

18  LMRA."  (*Id.* (citing *Atuatasi v. Securitas Security Servs. USA, Inc.*, No. LA 18-cv-2786-VAP

19  (PLAx), 2018 WL 2748259, at *2 (C.D. Cal. June 6, 2018)).)  Plaintiff asserts preemption is also

20  not warranted because a court "may have to consult the CBA [or] 'look[] to' the CBA merely to

21  discern that none of its terms is reasonably in dispute."  (*Id.* (citing *Bradford v. Professional*

22  *Tech. Security Servs. Inc. (Protech)*, No. 20-cv-02242-WHO, 2020 WL 2747767, at *1 (N.D. Cal.

23  May 27, 2020)).)  In opposition, Defendants again cite to various sections of the CBA and argue

24  that these claims require "the Court to analyze and interpret the CBA and the past practices

25  between Defendants and the Laborers Union."  (ECF No. 9 at 23–24.)  Defendants state these

26  sections "require interpretation of other provisions in the CBA including the applicable shift,

27  applicable rate for working through a meal period and consideration of whether the meal period

28  could be staggered" and "represent a significant departure from California law in that the CBA

1    permits operational requirements to dictate whether an employee can take his or her rest period,

2    allow the employee to combine rest periods with their meal period or at the end of the workday

3    for days worked in excess of ten hours and require the employee to remain in a designated area

4    while on break." (*Id.* at 24–25.) Defendants assert "the Court must interpret the parties' practices

5    regarding the extent to which they agree that Plaintiff may take meal periods and rest break[s in]

6    accordance with its terms." (*Id.* at 24.)

7        Here, it appears to the Court that Defendants' argument is that resolution of these claims

8    will require application, versus interpretation, of the relevant CBA provisions at issue.  As

9    previously noted, this is insufficient to invoke federal jurisdiction. *See Castillo*, 132 F. Supp. 3d

10   at 1200–01.  Further, Defendants do not point to any vague terms or provisions which the Court

11   will be required to evaluate.  The Court here again finds that the cases to which Plaintiff cites are

12   analogous to the instant matter. *See Atuatasi*, 2018 WL 2748259, at *2 (finding the plaintiff's

13   meal and rest break and overtime compensation claims are not preempted by § 301 because the

14   plaintiff's claims "attempt to assert state-law rights granted by the Labor Code and do not refer to

15   the CBA" and "the CBA is clear and does not require interpretation"); *Bradford*, 2020 WL

16   2747767, at *1 (finding the plaintiff's rest and meal breaks claim not preempted by § 301, as the

17   defendant failed to show "an active dispute over the term that . . . would require interpretation of

18   it as opposed to merely applying it" with respect to the former and the court would only have to

19   "look" at the exception provided in the CBA with respect to the latter).  Similarly here, Plaintiff's

20   claims in the FAC do not refer to the CBA nor do Defendants establish that any of the provisions

21   of the CBA to which they have cited require interpretation, versus an application of or a "look"

22   to.  (*See* ECF No. 1-1 at 367–75); *Atuatasi*, 2018 WL 2748259, at *2; *Bradford*, 2020 WL

23   2747767, at *1.  Accordingly, resolution of these claims is not "substantially dependent" on

24   analysis of the CBA. *See Burnside*, 491 F.3d at 1059–60.

25       Because resolution of the alleged violations of the various sections of the Labor Code and

26   IWC Wage Orders in Plaintiff's PAGA claim is not "substantially dependent" on analysis of the

27   CBA, the Court finds that Plaintiff's claim is not preempted by § 301 of the LMRA.

28   Accordingly, there is no basis for federal jurisdiction and the Court GRANTS Plaintiff's motion

1  to remand.

2          B.      <u>Request for Attorney's Fees and Costs</u>

3        Plaintiff argues he is entitled to attorney's fees and costs.  (ECF No. 5-1 at 22–23.)  "An

4  order remanding the case may require payment of just costs and any actual expenses, including

5  attorney fees, incurred as a result of removal."  28 U.S.C. § 1447(c).  "Absent unusual

6  circumstances, courts may award attorney's fees under § 1447(c) only where the removing party

7  lacked an objectively reasonable basis for seeking removal.  *Martin v. Franklin Capital Corp.*,

8  546 U.S. 132, 141 (2005).  Here, the Court cannot say that Defendants "lacked an objectively

9  reasonable basis for seeking removal."  *Id.*  The Ninth Circuit's decision in *Silva* — which

10  provides further guidance as to LMRA preemption for similar claims — was not decided until

11  after Defendants removed the case to this Court and after all the briefing on the instant motion

12  was submitted.  The Court further finds that Defendants made a good faith argument in favor of

13  removal and federal jurisdiction.  As such, the Court DENIES Plaintiff's request for attorney's

14  fees and costs under 28 U.S.C. § 1447(c).

15      **IV.**   **CONCLUSION**

16        Based on the foregoing, the Court hereby GRANTS Plaintiff's Motion to Remand and

17  DENIES Plaintiff's Request for Attorney's Fees and Costs.  (ECF No. 5.)  The case is remanded

18  back to Butte County Superior Court and the Clerk of the Court is directed to close the case.

19        IT IS SO ORDERED.

20  DATED:  March 16, 2022

21

22

23                          Troy L. Nunley

24                          United States District Judge

25

26

27

28